## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

GOLD CREEK FOODS, LLC,     )
GOLD CREEK PROCESSING, LLC   )
                     )
     Plaintiffs,         )
v.                       )       CIVIL ACTION
                     )
CITY OF DAWSONVILLE, GEORGIA;)   FILE NO.: _____
JOHN WALDEN, in his individual and  )
official capacity; CALEB PHILLIPS,  )
in his individual and official capacity;  )
WILLIAM ILLG, in his individual    )
and official capacity; SANDY SAWYER, )
in her individual and official capacity;  )
MARK FRENCH, in his individual and )
official capacity; BOB BOLZ, in his   )
individual and official capacity; and   )
JACOB BARR, in his individual and   )
official capacity.               )
                     )
     Defendants.        )
_____

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND OTHER RELIEF</u>

COMES NOW Plaintiffs GOLD CREEK FOODS, LLC, and GOLD CREEK PROCESSING, LLC, by and through their undersigned counsel, and hereby files this their Verified Complaint for Injunctive, Declaratory and Other Relief ("**Complaint**") against Defendants the CITY OF DAWSONVILLE, GEORGIA, JOHN WALDEN (in both his individual and official capacity), CALEB PHILLIPS (in both his individual and official capacity), WILLIAM ILLG

(in both his individual and official capacity), SANDY SAWYER (in both her individual and official capacity), MARK FRENCH (in both his individual and official capacity), BOB BOLZ (in both his individual and official capacity), and JACOB BARR (in both his individual and official capacity), showing the Court as follows:

## BACKGROUND AND NATURE OF CASE

1.

Plaintiffs Gold Creek Foods, LLC and Gold Creek Processing, LLC (collectively referred to as "**Gold Creek**") operate a poultry processing plant in the City of Dawsonville which produces industrial wastewater which is pre-treated and discharged to Dawsonville's public sewer and wastewater collection system pursuant to an Industrial Pre-treatment Permit issued by the Georgia Department of Natural Resources, Environmental Protection Division (the "**EPD Permit**"). In addition, Gold Creek discharges sewage from the plant's employee restrooms to the city's sewer and wastewater collection system. The City of Dawsonville ("**City**") has taken the position that, although the quality of Gold Creek's wastewater meets all of the effluent limits contained in the EPD Permit, it is "high strength wastewater" governed by illegal and unconstitutional provisions in the City's ordinances. As a result, the City and the other named Defendants have assessed surcharges, penalties, penalties on penalties and costs against Gold Creek

for purported ordinance violations and have continually threatened to disconnect, discontinue, terminate or turn off water and sewer service to Gold Creek and its plant. The City's threatened action would result in irreparable harm as described more fully herein.

2.

Accordingly, this is an action for a preliminary injunction and, ultimately, a permanent injunction. More specifically, Gold Creek commenced this action to obtain preliminary and permanent injunctive relief preventing the named Defendants, their officials, agents, servants and employees, and anyone acting in concert with them or any of them, from disconnecting, discontinuing, terminating or turning off water and sewer service to Gold Creek and its poultry processing plant in Dawsonville, Georgia, all to prevent irreparable harm to Gold Creek, its employees, and its customers, as well as consumers of its poultry food products and the economy in general. Likewise, this action also seeks to enjoin the City and its officials from enforcing or collecting surcharges, penalties, penalties on penalties and costs that have been illegally assessed against Gold Creek and from continuing to take action to enforce purported ordinance violations by assessing Gold Creek with surcharges, penalties, penalties on penalties and costs under the City's illegal and unconstitutional ordinances. Further, by this action, Gold Creek seeks a declaratory judgment that the City ordinances at issue in this case are

unconstitutional, both facially and as applied, under the United States Constitution and the Georgia Constitution. Accordingly, by this action Gold Creek also seeks an award of its costs of litigation, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1983 and § 1988.

## THE PARTIES

3.

Gold Creek Processing, LLC is a limited liability company duly organized and existing under the laws of the State of Georgia with its principal place of business located at 325 Washington Street, Gainesville, Georgia 30501. Gold Creek Foods, LLC is an affiliate of Gold Creek Processing, LLC, and is also a limited liability company duly organized and existing under the laws of the State of Georgia with its principal place of business located at 325 Washingtons Street, Gainesville, Georgia 30501. Gold Creek Foods, LLC and Gold Creek Processing, LLC (collectively referred to as "**Gold Creek**") own and operate a total of eight poultry processing operations in the state of Georgia. Seven of Gold Creek's plants are located in Gainesville, Georgia, and one of these plants is located in Dawsonville, Georgia. More specifically, Gold Creek Processing, LLC leases and operates Gold Creek 1 Plant (the "**Plant**"), which is located at 686 Highway 9 North in Dawsonville, Georgia.  Since June 18, 2020 Gold Creek Processing has been the party paying the sewer and water bills and surcharges and penalties for

"high strength wastewater" assessed by the City for the Plant in Dawnsonville. Gold Creek Foods, LLC is the permittee of the Plant under the EPD Permit.

4.

Defendant the City of Dawsonville, Georgia ("**City**" or "**Dawsonville**") is a municipal corporation organized and existing under the laws of the state of Georgia, and is situated in Dawson County, Georgia. The City may be served with process personally through its Mayor, John Walden, or other agent authorized by appointment to receive service of process, wherever found throughout Dawsonville, Georgia.

5.

Defendant John Walden ("**Walden**") is a resident and citizen of Dawsonville, Georgia and currently serves as the Mayor of Dawsonville. Walden may be served with process personally wherever he may be found throughout Dawsonville, Georgia.

6.

Defendant Caleb Phillips ("**Phillips**") is a resident and citizen of Dawsonville, Georgia and currently serves as a member of the Dawsonville City Council. Phillips may be served with process personally wherever he may be found throughout Dawsonville, Georgia.

7.

Defendant William Illg ("**Illg**") is a resident and citizen of Dawsonville, Georgia and currently serves as a member of the Dawsonville City Council. Illg may be served with process personally wherever he may be found throughout Dawsonville, Georgia.

8.

Defendant Sandy Sawyer ("**Sawyer**") is a resident and citizen of Dawsonville, Georgia and currently serves as a member of the Dawsonville City Council. Sawyer may be served with process personally wherever she may be found throughout Dawsonville, Georgia.

9.

Defendant Mark French ("**French**") is a resident and citizen of Dawsonville, Georgia and currently serves as a member of the Dawsonville City Council. French may be served with process personally wherever he may be found throughout Dawsonville, Georgia.

10.

Defendant Bob Bolz ("**Bolz**") is a resident and citizen of Dawsonville, Georgia and currently serves as the City Manager of Dawsonville. Bolz may be served with process personally wherever he may be found throughout Dawsonville, Georgia.

11.

Defendant Jacob Barr ("**Barr**") is a resident and citizen of Dawsonville, Georgia and currently serves as the Utilities Director of Dawsonville. Barr may be served with process personally wherever he may be found throughout Dawsonville, Georgia.

## JURISDICTION AND VENUE

### 12.

This Court has jurisdiction over Gold Creek's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Gold Creek's state law claims pursuant to 28 U.S.C. § 1367.

### 13.

Venue in the United States District Court for the Northern District of Georgia, Gainesville Division, is proper pursuant to 28 U.S.C. § 1391.

## ANTE-LITEM

### 14.

Gold Creek has not provided the City with ante-litem notice of its injunction claim because the claims contained in this Complaint do not involve a claim for money damages on account of injuries to person or property as used in O.C.G.A. § 36-33-5, and ante-litem notice is not required. Even if the claims herein were within those covered by the ante-litem notice provisions of O.C.G.A. § 36-33-5, the conduct of the Defendants at issue in this injunction action, which Gold Creek seeks to enjoin, threatens an emergency situation such that Gold Creek cannot wait

thirty (30) days for the City to consider and act on this matter, and ante-litem notice therefore is not required by O.C.G.A. § 36-33-5. Moreover, based on the Defendants' conduct, as alleged herein, any ante-litem notice would be futile.

## OPERATIVE FACTS

### *Gold Creek's Operations*

### 15.

Gold Creek is engaged in, among other things, the business of processing and selling poultry products to its customers in the food and restaurant industry.

### 16.

Gold Creek opened its Plant in Dawsonville in 2004. Gold Creek currently employs 402 people, many of whom are citizens and residents of Dawson County, as hourly staff at the Plant. The Plant operates 24 hours a day and 5 to 7 days a week.

### 17.

Gold Creek's Plant in Dawsonville is not a poultry slaughter plant that produces intact whole broilers, which is known as primary-processed poultry. Instead, the Plant in Dawsonville performs multiple further processing of poultry, or secondary poultry processing operations, such as the conversion of raw broilers into value-added, more convenient-to-use forms, including cut portions and marinaded pieces. These operations include the complex performance of cut-up, deboning and specialty preparation of poultry food products. The Plant prepares

custom processed poultry product for customers, such as the United States Department of Agriculture. The Plant crafts and cuts each poultry product to its customers' exacting specifications, such as tenders, nuggets, fillets, and strips. The poultry that Gold Creek processes at the Plant in Dawsonville is perishable, and the products that Gold Creek produces are perishable products. Gold Creek's poultry products are consumed by people throughout the State of Georgia and elsewhere.

18.

In order to process poultry at the Plant in Dawsonville, it is essential and necessary that Gold Creek have the continuous service and supply of water. For example, water service and supply is needed to wash poultry and poultry products, as well as for employee consumption and the washroom and toilet facilities utilized by employees while working at the Plant. On average, the Gold Creek Plant processes approximately 3.4 million pounds of poultry per week. The Plant uses approximately 26,000 gallons of water per day and 181,000 gallons per week. The Plant needs and requires approximately 54 gallons of water per 1,000 pounds of poultry material handled. Accordingly, water service is necessary to produce clean and sanitary food for the people of Dawson County, the State of Georgia, and elsewhere.

19.

Gold Creek's Plant facility is designed pursuant to modern/state-of-the-art industry standards. In or about 2018, Gold Creek invested approximately one million dollars for the design and construction of an upgraded pre-treatment facility at the Plant which processes and treats industrial wastewater before it is discharged into the City's sewerage system to very high standards set by the State of Georgia Environmental Protection Division ("**EPD**"). This upgraded pre-treatment facility was installed so that Gold Creek could begin processing marinaded pieces of poultry.

20.

Gold Creek's Plant has a valid Industrial Pre-treatment Permit (Permit No. GAP050270), issued by the EPD. Gold Creek has applied for the renewal of its prior permit, which was effective August 1, 2018 through July 31, 2023, and which authorized the Plant to discharge industrial wastewater to the City's sewerage system. Gold Creek is awaiting comments on its draft permit from EPD. With respect to Gold Creek's prior permit, EPD published notice and solicited public comment, and also gave the City a specific opportunity to comment on the permit, and the City neither objected to the permit's issuance nor sought any change in the effluent limits on Gold Creek's wastewater discharge or in the manner of compliance sampling of the discharge. A true and correct copy of the prior permit

issued by EPD for Gold Creek's Plant is attached hereto as **Exhibit 1** and incorporated by reference.

21.

The Plant, like thousands of other homes, City buildings and businesses within the City of Dawsonville, also discharges sewage, as defined in O.C.G.A. § 12-5-22(11), from restrooms at the Plant to the City's sewerage system, through a dedicated discharge pipe that is part of a separate and distinct collection system from the collection system that discharges the Plant's industrial wastewater. In fact, these discharge lines remain separate as they leave the Plant building and only merge once off Gold Creek property. The Plant's sewage, like sewage from thousands of other homes, City buildings and businesses within the City, is not required to have a permit and is not subject to the treatment requirements and effluent limits contained in the EPD Permit or in the City's ordinance.

### *City Water and Sewer Service*

22.

The City owns and operates a municipal water and sewer utility that provides water and sewer services to its residents and businesses. The City sells water and sewer services to residential, commercial, and industrial customers inside the City limits through the Dawsonville Utility Department. Gold Creek is the City's only industrial customer. At all relevant times, the City has operated the

only municipal water and sewer system in the City limits. No other person or entity provides competing water and sewer service within the City's corporate limits. Thus, the City is the sole supplier of water and sewer services within Dawsonville and maintains a monopoly over providing water and sewer to its residents.

23.

Upon information and belief, for its water treatment and distribution system, the City operates four production groundwater wells and one production spring, and has two elevated storage tanks, for the purpose of providing water to its customers. Upon information and belief, the City also purchases water from Etowah Water & Sewer Authority.

24.

Upon information and belief, for its sewage collection and treatment system, the City operates a wastewater facility, which includes nine lift stations, an aerated treatment pond, a land application storage pond, and twelve spray fields, as part of its sewerage system. The City collects wastewater, including sewage and industrial wastewater, from manholes and sewer lines throughout the City, which then direct the wastewater to the City's wastewater treatment facility. The City's treatment facility operates pursuant to a permit issued to the City by the EPD.

### *Gold Creek's Reliance on the City to Provide Water and Sewer Services*

25.

Gold Creek is a customer of the City's water and sewer services, and it has timely paid substantial sums of money to the City for such services for many years.

26.

Gold Creek and its operations at the Plant depend on the steady and continuous delivery and availability of water services from the City so that Gold Creek may process poultry products at the Plant and fulfill its contracts to supply poultry food items to its customers. Gold Creek and its operations at the Plant also depend on a steady and continuous delivery and availability of sewer services so that Gold Creek may discharge its industrial wastewater and sewage into the City's public sewerage system.

27.

Gold Creek is dependent on the timely and undisturbed supply of water and sewer service from the City. Defendants are well aware of the importance of a constant and predicable supply of water and sewer services to Gold Creek's Plant operations and Gold Creek's business. Like thousands of other homes, City buildings and businesses in the City, Gold Creek is dependent on consistent water and sewer services from the City to provide a clean and sanitary workplace, and to protect the health and welfare of its employees, the clean and sanitary production of food products, and the health and welfare of people throughout Dawson County,

the State of Georgia and elsewhere who consume the food products produced by Gold Creek at the Plant. The Defendants are aware that the City must consistently supply water and sewer service to Gold Creek in a timely and orderly manner in order for Gold Creek's Plant to meet its operating schedule and pay its workforce, meet the needs of its customers, and maintain its reputation and goodwill with its customers.

28.

Gold Creek cannot operate its Plant and process poultry products without water and sewer service. Gold Creek is unable to obtain water and sewer service from any source other than the City. Although Gold Creek sought the City's permission to transfer its water and sewer service to Etowah Water & Sewer Authority, the City has failed to give its unconditional consent. Gold Creek and its operations and business therefore must rely on the City to provide water and sewer services. There is no other source of water and sewer service available to Gold Creek to replace the services which the City wrongfully threatens to terminate.

### ***City Water and Sewer Services Ordinance***

29.

At all times relevant to the Complaint, the City's Water and Sewer Service Ordinance, *The Code of Dawsonville, Georgia, Ch. 14, Art. II, Div. I, §§ 14-19, et*

*seq.* (the "**Ordinance**")*,* provided in relevant part as follows regarding suspension of service:

**Sec. 14-26. - Suspension of service.**

(c)  *Authority to enforce provisions.* The city, the city manager, or any duly authorized representative shall have the authority to enforce the provisions of this section by the discontinuance of water service, sewer service and garbage service in the event any person shall continue to violate the provisions of this section whether through non-payment or otherwise after receiving oral or written notice of the violation from the city.

(d)  *Authority to terminate service.* Whenever the city, the city manager, or any duly authorized representative determines that a person is violating or has violated any provision of this section and determines that the violation of this section will cause immediate damage or harm to the water system, sewers, sewage treatment process, equipment, or treatment facilities of the city, or that the violation endangers the public health, safety, or general welfare of the community, the city, the city manager, or any duly authorized representative shall have the power and authority to immediately revoke, orally or in writing, any water or sewerage permit of the person violating any provision of this section or terminate that person's water service and sewer service, or both.

A true and correct copy of Sec. 14-19 through Sec. 14-85 of the Ordinance (November 2, 2023 version) is attached hereto as **Exhibit 2** and incorporated by reference. Section 14-26 of the Ordinance remains unchanged through the present.

30.

At all times relevant to the Complaint, the City's Ordinance provided in relevant part as follows regarding an appeal of suspension of service:

**Sec. 14-26. - Suspension of service.**

(f)   *Appeal procedure.* Any person aggrieved by having any sewerage permit, water and sewer service, garbage service or any combination thereof terminated or revoked by the city, the city manager, or any duly authorized representative shall have the right to appeal the revocation to the city council. Such appeal shall be filed within five business days from the date of the termination by notifying the city clerk in writing and specifying the grounds of appeal. The city council shall, within ten days after the receipt of the notice of appeal, fix a date and time for the hearing of the appeal, and after due notice to the parties at interest shall have a hearing on the appeal within 20 days of the date the notice of appeal was received by the city. The council shall issue a written ruling on the issues presented within ten business days of the hearing. Any person dissatisfied with the ruling of the council shall have the right to appeal that ruling by writ of certiorari pursuant to O.C.G.A. § 5-4-1 et seq. to the county superior court.

(Exhibit 2). Section 14-26 of the Ordinance remains unchanged through the present.

31.

At all times relevant to the Complaint, the City's Ordinance provided in relevant part as follows regarding complaints concerning bills:

**Sec. 14-27. - Complaints and adjustments.**

(a)   If the consumer believes his bill to be in error, he shall present his claim, in person, at City Hall before the bill becomes delinquent. Such claim, if made after the bill has become delinquent, shall not be effective in preventing discontinuance of service as heretofore provided. The consumer may pay such bill under protest and such payment shall not prejudice his claim.

(Exhibit 2). Section 14-27 of the Ordinance remains unchanged through the present.

32.

Prior to February 17, 2020, the City's Ordinance provided in relevant part as follows regarding penalties and violations:

**Sec. 14-30. - Penalties for violation.**

(b)     Any person or user found to be violating any provision of this article, other than for non-payment of bills or wrongful discharge as set forth in subsection (c) below, shall be issued a citation returnable to the city court for the city and upon conviction be punished as provided for under city ordinances and state law. Each day in which any such violation continues shall be deemed a separate offense.

(c)     Any industry, commercial concern, person, or user who discharges any waste material from any source into manholes on the city's sewer system or who discharges or causes to be discharged toxic substances without paying for the increased cost, or those incompatible substances as described under section 14-34, shall be in violation of this article and subject to the maximum penalties allowed by state law. Each pound or gallon of the incompatible substances discharged or caused to be discharged into the city sewer system shall be deemed a separate offense with each offense subject to the maximum penalty allowed by state law. Jurisdiction for prosecution of a violation under this sub-section shall lie in the city court or in the superior court the County *[sic]* at the choice of the city. Further, the city, in its discretion, may decline to accept the discharge of any industry, commercial concern, person, or user who discharges or causes to be discharges *[sic]* any incompatible substance as outlined in section 14-34 and may quit providing sewage treatment to the violator until such time as the violator has demonstrated the ability to prohibit the discharge of incompatible substances into the sewer system. In order to facilitate the prevention of the discharge of the incompatible substances into the sewer system and the utility to decline to accept such discharges, the city shall have the right to enter upon the private property of such violator and cut off access to the sewer system of the city.

(d)     Any person violating any of the provisions of this article shall become liable to the city for any expense, loss, damage, fine, penalty, or fee occasioned the city by reason of such violation or violations, including,

17

but not limited to, any fee, penalty, or fine assessed against the city by any state or federal agency as a result of such violation or violations. See sections 14-23(c); 2-110; 14-25(a)(1); and 14-25(a)(3).

A true and correct copy of Sec. 14-19 through Sec. 14-84 of the Ordinance (November 26, 2019 version) is attached hereto as **Exhibit 3** and incorporated by reference. Section 14-30 of the Ordinance was changed effective February 17, 2020, as shown more fully below. *See* ¶ 33.

33.

Prior to February 17, 2020, the City's Ordinance provided in relevant part as follows regarding high strength wastewater surcharges:

**Sec. 14-84. - High strength wastewater surcharge.**

(a)     *Establishment of surcharge.* Users discharging "high strength" wastewater into the city sewerage system may be assessed a monetary surcharge in addition to the normally required sewer use charges in an amount to be calculated below. A "high strength" wastewater is defined as wastewater which contains any of the following six primary pollutants above the lower levels set forth on a monthly average concentration basis and shall not exceed the maximum level on a daily average concentration basis:

     (1)     Five-day 20°C (20 degrees Centigrade) biochemical oxygen demand ($BOD_5$) above 350 milligrams per liter (mg/l), not to exceed a maximum of 600 mg/l.

     (2)     Chemical oxygen demand (COD) above 700 milligrams per liter (mg/l), not to exceed a maximum of 1,200 mg/l.

     (3)     Total ammonium nitrogen $NH_3$-N above 30 mg/l, not to exceed a maximum of 60 mg/l.

     (4)     Total TKN above 40 mg/l, not to exceed a maximum of 80 mg/l.

    (5)    Total phosphorus above 20 mg/l, not to exceed a maximum of 30 mg/l.

    (6)    Floatable oil and grease above 100 mg/l, not to exceed a maximum of 150 mg/l.

The above parameters shall be determined by the utilization of sampling and testing procedures as provided in (d) below.

(b)    *Formula.* When the concentration of the surcharge parameters exceeds the lower level values shown above, the excess concentration shall be subject to a surcharge in the amount obtained using the following formula:

Surcharge \$/month = P × Q × 8.34 × C

Where:

"P" is the excess monthly average concentration in mg/l of the parameter ($BOD_5$, etc.) being evaluated i.e. the actual concentration less the allowable lower level concentration listed in paragraph (A). The maximum level concentration shall not be exceeded.

"Q" is equal to the user's monthly flow in millions of gallons.

"C" is equal to the unit cost in dollars per pound (\$/lb) for the treatment of the surcharged parameter. This value shall be established by the city based on actual wastewater treatment costs which shall be revised from time to time as necessary.

Since high strength wastewater can inhibit the treatment process, as a penalty the costs per pound shall increase if the pollutant concentration increases above the lower level limit as follows:

| Pollutant Increase | Costs per pound | Net Result |
|---|---|---|
| 0—25% increase | 0% increase | Surcharge + no penalty |
| 26—50% increase | 100% increase | Surcharge + 100% penalty |

| 51—75% increase | 150% increase | Surcharge + 150% penalty |
| Over 75% increase | 300% increase | Surcharge + 300% penalty |

(c) *Quantitative measurements of surchargeable parameters.* The measurements of the surchargeable parameters shall be conducted as follows:

(1) Monitoring to determine surcharge shall be conducted by the user as required either in the pretreatment permit or a minimum of two tests per month. The average of all test results will be used to calculate the surcharge.

(2) Above the required two tests per month, the city may sample the user as often as desired at the city's expense. The city will split the sample with the user at the user's request.

(d) *Sampling and testing procedures.*

(1) The user must collect wastewater samples using flow proportional composite collection techniques. In the event flow proportioned sampling is not feasible, the city may authorize the use of time proportional sampling or a minimum of four grab samples where the user demonstrates that this will provide a representative sample of the effluent being discharged. In addition, grab samples may be required to show compliance with instantaneous discharge limits.

(2) All wastewater monitoring samples required should be tested by an independent laboratory, with the results submitted to the city on laboratory report sheets. The requirement for utilization of an independent laboratory may be waived by the city when the required tests are performed by the city or other approved agency or when "split" samples are provided to the city and the city's testing results show a reasonably good correlation with the user's in-house testing results.

All measurements, tests and analyses shall be determined in accordance with the latest edition of "Standard Methods for the Examination of Water and Wastewater."

(3)   The costs incurred for sampling and testing shall be the responsibility of the customer.

(e)   *Billing procedure.* Wastewater surcharges as provided for in this section will be included either on the user's regular water and sewer bill or on a separate wastewater surcharge bill.

(Exhibit 3).

34.

Effective February 17, 2020, the City, acting through the Mayor and City Council Defendants, enacted Ordinance No. 03-2020, and changed Section 14-30(c) of its Ordinance to provide as follows regarding penalties and violations:

**Sec. 14-30. - Penalties for violation.**

(c)   Any industry, commercial concern, person, or user who discharges any waste material from any source into manholes on the city's sewer system or who discharges or causes to be discharged toxic substances without paying for the increased cost as described in section 14-78, or those incompatible substances as described in sections 14-79, 14-80 and 14-81, or fails to pay the surcharges for high strength wastewater as described in section 14-84 shall be in violation of this article and subject to the maximum penalties allowed by state law and city ordinance. Each pound or gallon of the incompatible substances discharged or caused to be discharged into the city sewer system shall be deemed a separate offense with each offense subject to the maximum penalty allowed by state law and city ordinance. Jurisdiction for prosecution of a violation under this subsection shall lie in the City Court of Dawsonville or in the Superior Court of Dawson County at the choice of the city. Further, the city, in its discretion, may decline to accept the discharge of and disconnect sewer service to any industry, commercial concern, person, or user who discharges or causes to be discharged any incompatible substance or who violates any provision of

21

article II. Sewer service may only be resumed upon payment of all outstanding fees, fines and interest by the violator and demonstration by the violator to the city's satisfaction that the violator has the ability to prohibit the discharge of incompatible substances into the sewer system and otherwise comply with all provisions of article II. In order to enforce article II and protect its sewer system, the city shall have the right to enter upon the private property of such violator and cut off access to the sewer system of the city.

A true and correct copy of Sec. 14-19 through Sec. 14-84 of the Ordinance (April 8, 2020 version) is attached hereto as **Exhibit 4** and incorporated by reference.

35.

Effective January 20, 2022 the City, acting through the Mayor and City Council Defendants, enacted Ordinance No. 01-2022, to add a new section to become Section 14-30(d) of its Ordinance. New Section 14-30(d) provides as follows regarding penalties and violations:

**Sec. 14-30. - Penalties for violation.**

(d)    For the second offense in any twelve (12) month period, a repeat offender fee equal to 25% of the penalty shall be added, with a fee equal to 50% of the penalty for the third offense, 75% of the penalty for the fourth and the fee shall be doubled (100%) for the fifth and any subsequent offense during any twelve (12) month period. The foregoing notwithstanding, no fees shall be assessed in excess of that allowed by State Law to the extent addressed by State Law.

A true and correct copy of Sec. 14-19 through Sec. 14-84 of the Ordinance (May 23, 2022 version) is attached hereto as **Exhibit 5** and incorporated by reference.

After January 20, 2022, Sec. 14-30 remains unchanged through the present.

36.

Effective January 20, 2022 the City, acting through the Mayor and City Council Defendants, enacted Ordinance No.01-2022, to amend Section 14-84(a), adding Subsection 14-84(a)(7) and amending Section14-84(c) of its Ordinance to provide as follows regarding high strength wastewater surcharges:

**Sec. 14-84. –High strength wastewater surcharge.**

(a)   *Establishment of surcharge.* Users discharging "high strength" wastewater into the city sewerage system may be assessed a monetary surcharge in addition to the normally required sewer use charges in an amount to be calculated below. A "high strength" wastewater is defined as wastewater which contains any of the following six primary pollutants above the lower levels set forth on a monthly average concentration basis and shall not exceed the maximum level on a daily average concentration basis:

      (1)   Five-day 20°C (20 degrees Centigrade) biochemical oxygen demand (BOD 5 ) above 350 milligrams per liter (mg/l), not to exceed a maximum of 600 mg/l.

      (2)   Chemical oxygen demand (COD) above 700 milligrams per liter (mg/l), not to exceed a maximum of 1,200 mg/l.

      (3)   Total ammonium nitrogen NH 3 -N above 30 mg/l, not to exceed a maximum of 60 mg/l.

      (4)   Total TKN above 40 mg/l, not to exceed a maximum of 80 mg/l.

      (5)   Total phosphorus above 20 mg/l, not to exceed a maximum of 30 mg/l.

      (6)   Floatable oil and grease above 100 mg/l, not to exceed a maximum of 150 mg/l.

      (7)   Total suspended solids above 300 milligrams per liter (mg/l), not to exceed a maximum of 600 mg/l.

(c)   *Quantitative measurements of surchargeable parameters.* The measurements of the surchargeable parameters shall be conducted as follows:

      (1)   Monitoring to determine surcharge shall be conducted by the user as required in either the pretreatment permit or a minimum of two tests per month. The average of all test results will be used to calculate the

surcharge. If multiple tests are taken and at least two tests exceed the allowable limit, then the surcharge and penalty will be prorated.

(2)    Above the required two tests per month, the city may sample the user as often as desired at the city's expense. The city will split the sample with the user at the user's request.

(Exhibit 5). After January 20, 2022, Sec. 14-84 remains unchanged through the present.

37.

Effective July 17, 2023, the City, acting through the Mayor and City Council Defendants, enacted Ordinance No.06-2023 to add Sec. 14-85 to the Ordinance, which provides:

**Sec. 14-85. –Authority to remove or adjust fees.**

The city manager or his or her designee shall have the authority, in his or her sole discretion, to remove or adjust any fee imposed by this article upon finding the imposition of such fee would cause undue hardship to the customer, that there is a valid basis for removing or adjusting the fee, and that the removal or adjustment of the fee will not result in repetitive fee adjustments or removals for the customer at issue or any other. Notwithstanding, neither the city manager nor his or her designee shall have authority to remove or adjust service charges imposed under sections 14-21 and 14-22 of this article.

(Exhibit 2). Sec. 14-85 remains unchanged through the present.

38.

Upon information and belief, the City and its officials amended Section 14-30 of the Ordinance regarding penalties in order to assess penalties and/or prosecute Gold Creek for purported high strength wastewater discharge

24

"violations", and/or to decline to accept the discharge of Gold Creek's sewage and industrial wastewater and to disconnect sewer service to its Plant. Upon information and belief, the City and its officials amended Section 14-30 of the Ordinance to generate revenues and are conducting activities for corporate advantage, gain or emolument.

39.

Because the Ordinance, as amended, authorizes "the city, the city manager, or any duly authorized representative" to enforce the Ordinance, as amended, upon information and belief, Defendants Walden, Phillips, Illg, Sawyer, French, Bolz and Barr are responsible for enforcing and able to enforce the Ordinance as amended.

40.

The City's Ordinance, both before February 17, 2020 and after February 17, 2020, is silent and does not contain any appeal provision for challenging or appealing the City's imposition of high strength wastewater surcharges pursuant to Section 14-84. The only appeal provision contained within the City's Ordinance, even as amended, is found at Section 14-26(f), and such provision only provides for an appeal to City Council following the termination or revocation of a sewer permit or water and sewer service by the City, the city manager, or a duly authorized representative for reasons other than discharge of high strength

wastewater. The only provision contained within the City's Ordinance, as amended, whereby a customer can complain or present a claim about a bill is found at Section 14-27, but such provision does not set forth a process for review and decision of the customer's complaint, nor does it provide for judicial review if the customer is dissatisfied with how the City handles its complaint. Based on the Defendants' conduct, as alleged herein, any appeal to the City Council would be futile.

***City's Assessment of Surcharges for High Strength Wastewater Discharges and Gold Creek's Protest Payments Under Duress and Unanswered Protests***

41.

In compliance with the EPD Permit issued by EPD to Gold Creek, Gold Creek has sampled and analyzed its industrial wastewater discharges to the City sewer system on a weekly basis, and during the relevant time period, including specifically September 2022 to the present, Gold Creek's industrial wastewater has at all times been in compliance with the EPD Permit and has not met the definition of "high strength wastewater" in the City's Ordinance, as amended.

42.

The City also tests Gold Creek's discharge for the purpose of assessing surcharges under Sec. 14-84 of its Ordinance. The City's current testing station is at a place in the pipe after the merge of Gold Creek's sanitary sewer line and industrial wastewater line, contrary to the testing method in the EPD Permit and to

the City's Ordinance. Further, Gold Creek only discharges industrial wastewater once or twice a day, at a large volume, and sanitary water is discharged sporadically at small volumes, with intermittent increased discharges coinciding with scheduled break times for the Plant employees. Only water from sinks and toilets in the restrooms is discharged to the sanitary sewer line.  Upon information and belief, the timing of the City's sampling results in samples with commingled sanitary and industrial water.

43.

Beginning in January of 2020, the City began sending letters with attached invoices to Gold Creek for industrial surcharges for Gold Creek's wastewater for prior months of use. These letters also included purported sampling results and correspondence from Turnipseed Engineers that calculated the surcharges. These letters threatened service termination for Ordinance violations and for failure to pay an invoice. Up until October of 2022, these invoices for monthly industrial surcharges of wastewater were paid, many under express protest.

44.

After Gold Creek began receiving invoices from the City for surcharges, Gold Creek and the City entered into a dialogue in order to determine the cause of the city' purported sampling results with elevated pollutant levels in Gold Creek's discharge. Gold Creek believed then, and still believes today, that the elevated

results were tied to the City's choice of sampling location of Gold Creek's discharge, as the City's sampling location and timing led to samples with commingling of industrial and sanitary water. When Gold Creek proposed installing a manhole to test its sanitary discharge, the City sent Gold Creek a "Preliminary Subdivision Plan" checklist, a twelve page document with numerous requirements that the City stated Gold Creek must meet—including an engineered site plan, approval for a Georgia Department of Transportation Utility Permit, and approval from Georgia EPD—simply to install a manhole on Gold Creek property so that it could test its sanitary discharge before it leaves Gold Creek property. A true and correct copy of the "Preliminary Subdivision Plan" is attached hereto as **Exhibit 6**. Furthermore, when, in an attempt to investigate the reason for the City's sampling results that formed the basis of the "high strength wastewater" surcharges being assessed by the City, Gold Creek conducted a smoke test out of what was the city's sampling location at the time, the City issued Gold Creek a notice ("Gold Creek Trespass Notice") that threatened to prosecute Gold Creek for trespass. A true and correct copy of the Gold Creek Trespass Notice from the city is attached as **Exhibit 7**. ("Failure to adhere to this notice will amount to criminal trespass"). Upon information and belief, the City's actions were intentional in order to prevent Gold Creek from discovering information that would show the City's sampling to be erroneous and the surcharges therefore to be illegal.  The City's actions, through

the other Defendants, therefore ensured that the City could continue to assess fines of millions of dollars against Gold Creek.

45.

Beginning in October 2022, the City's surcharges against Gold Creek drastically increased in size. On October 28, 2022 Bolz sent a letter to Gold Creek which enclosed Invoice # 12300324 dated October 28, 2022 with a due date of November 14, 2022 for industrial surcharges, penalties under the Ordinance, as amended, and costs incurred for sampling and testing for Gold Creek wastewater for the month of September 2022 in the amount of $264,275.72. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The October 28, 2022 letter threatened service termination for purportedly violating the Ordinance, as amended, and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12300324 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 8** and incorporated by reference.

46.

On November 11, 2022 for Invoice # 12300324, Coby Edmonson, Gold Creek's Director of Environmental Services, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges,

penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's November 11, 2022 letter is attached hereto as **Exhibit 9** and incorporated by reference.

47.

On January 23, 2023, Gold Creek received a letter from Kevin Tallant, the City's Attorney. Tallant's letter states that the October 28, 2022 invoice to Gold Creek is not erroneous for the reasons that Gold Creek contends and once again states that "Gold Creek must pay the amount billed or face discontinuance of services pursuant to section 14-19 *et seq.* of the Dawsonville Code of Ordinances." A true and correct copy of Tallant's January 23, 2023 letter is attached hereto as **Exhibit 10** and incorporated by reference.

48.

On January 24, 2023 Bolz sent a letter to Gold Creek which enclosed Invoice # 12300655 dated January 24, 2023 with a purported due date of February 8, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the months of October, November, and December 2022 in the amount of $154,501.21. The January 24, 2023 letter stated that the due date was 15 days from receipt of the letter, but Invoice # 12300655

listed the due date as February 8, 2023, which was less than 15 days from January 24, 2023. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The January 24, 2023 letter again threatened service termination for purportedly violating the Ordinance, as amended, and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12300655 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 11** and incorporated by reference.

49.

On or before February 10, 2023, for Invoice # 12300655, Lynne Nix, administrative assistant at Gold Creek, personally appeared at Dawsonville City Hall and hand-delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 12** and incorporated by reference. Defendants have not responded to the protest.

50.

On March 8, 2023 Bolz sent a letter to Gold Creek which enclosed Invoice # 12300953 dated March 8, 2023 with a due date of March 23, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of January 2023 in the amount of $107,372.49. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The March 8, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12300953 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 13** and incorporated by reference.

51.

On or before March 23, 2022, for Invoice # 12300953, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and hand-delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is

attached hereto as **Exhibit 14** and incorporated by reference.  Defendants have not responded to the protest.

52.

On March 24, 2023 Bolz sent a letter to Gold Creek which enclosed Invoice # 12301007 dated March 24, 2023 with a due date of April 8, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of February 2023 in the amount of $81,434.58 Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The March 24, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12301007 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 15** and incorporated by reference.

53.

On or before April 8, 2023, for Invoice # 12301007, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States

and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 16** and incorporated by reference.  Defendants have not responded to the protest.

54.

On April 26, 2023 Bolz sent a letter to Gold Creek which enclosed Invoice # 12301089 dated April 26, 2023 with a due date of May 11, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of March 2023 in the amount of $62,525.29 Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The April 26, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12301089 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 17** and incorporated by reference.

55.

On or before May 11, 2023, for Invoice # 12301089, Gold Creek, personally appeared at Dawsonville City Hall and hand-delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number

of reasons and unconstitutional under the United States and Georgia Constitutions. Defendants have not responded to the protest.

56.

On May 12, 2023 Bolz sent a letter to Gold Creek which enclosed Invoice # 12301138 dated May 12, 2023 with a due date of May 27, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of April 2023 in the amount of $182,289.86. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The May 12, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12301138 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 18** and incorporated by reference.

57.

On or before May 30, 2023, for Invoice # 12301138, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States

and Georgia Constitutions.  A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 19** and incorporated by reference.  Defendants have not responded to the protest.

58.

On June 28, 2023, Bolz sent a letter to Gold Creek which enclosed Invoice # 12301238 dated June 28, 2023 with a due date of July 13, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of May 2023 in the amount of $105,063.94. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The June 28, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12301238 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 20** and incorporated by reference.

59.

On or before July 13, 2023, for Invoice # 12301138, Gordon Tatro, Gold Creek's Vice President of Technical Services, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous

under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 21** and incorporated by reference. Defendants have not responded to the protest.

60.

On July 24, 2023, Bolz sent a letter to Gold Creek which enclosed Invoice # 12400057 dated July 24, 2023 with a due date of August 8, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of June 2023 in the amount of $117,465.59. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The July 24, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12400057 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 22** and incorporated by reference.

61.

On or before August 8, 2023, for Invoice # 12400057, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs.

The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 23** and incorporated by reference.  Defendants have not responded to the protest.

62.

On August 23, 2023, Bolz sent a letter to Gold Creek which enclosed Invoice # 12400126 dated August 23, 2023 with a due date of September 7, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of July 2023 in the amount of $31,631.57. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The August 23, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12400126 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 24** and incorporated by reference.

63.

On or before September 7, 2023, for Invoice #12400126, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and

delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 25** and incorporated by reference.  Defendants have not responded to the protest.

64.

On September 14, 2023, Bolz sent a letter to Gold Creek which enclosed Invoice # 12400177 dated September 14, 2023 with a due date of September 29, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of August 2023 in the amount of $49,288.83. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The September 14, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12400177 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 26** and incorporated by reference.

65.

On or before September 29, 2023, for Invoice #12400177, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 27** and incorporated by reference.  Defendants have not responded to the protest.

66.

On October 24, 2023, Bolz sent a letter to Gold Creek which enclosed Invoice #12400266 dated October 24, 2023 with a due date of November 8, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of September 2023 in the amount of $134,296.62. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The October 24, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12400266 for

surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 28** and incorporated by reference.

67.

On or before November 8, 2023, for Invoice #12400266, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 29** and incorporated by reference. Defendants have not responded to the protest.

68.

On November 30, 2023, Bolz sent a letter to Gold Creek which enclosed Invoice #12400340 dated November 30, 2023 with a due date of December 15, 2023 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of October 2023 in the amount of $93,490.42. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The November 30, 2023 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the

surcharge invoice. A true and correct copy of said letter, Invoice # 12400340 for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 30** and incorporated by reference.

69.

On or before December 15, 2023, for Invoice #12400340, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 31** and incorporated by reference. Defendants have not responded to the protest.

70.

On December 21, 2023, Bolz sent a letter to Gold Creek which enclosed Invoice #12400399 dated December 21, 2023 with a due date of January 5, 2024 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of November 2023 in the amount of $61,008.57. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The December 21, 2023 letter again threatened service

termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12400399, for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 32** and incorporated by reference.

71.

On or before January 5, 2024, for Invoice #12400399, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 33** and incorporated by reference. Defendants have not responded to the protest.

72.

On January 30, 2024, Bolz sent a letter to Gold Creek which enclosed Invoice #12400607 dated January 30, 2024 with a due date of February 14, 2024 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of December 2023 in the amount of $103,067.64. Said letter also enclosed correspondence from Turnipseed Engineers calculating the surcharges and invoices from Environmental Management, Inc. for

sampling and testing. The January 30, 2024 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12400607, for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 34** and incorporated by reference.

73.

On or before February 14, 2024, for Invoice #12400399, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 35** and incorporated by reference.  Defendants have not responded to the protest.

74.

On February 16, 2024, Bolz sent a letter to Gold Creek which enclosed Invoice #12400752 dated February 16, 2024 with an incorrect due date of February 26, 2024 for industrial surcharges, penalties and costs incurred for sampling and testing for Gold Creek wastewater for the month of December 2023 in the amount of $96,362.61.   Said letter also enclosed correspondence from Turnipseed

Engineers calculating the surcharges and invoices from Environmental Management, Inc. for sampling and testing. The February 16, 2024 letter again threatened service termination for purportedly violating the Ordinance and for failure to pay the surcharge invoice. A true and correct copy of said letter, Invoice # 12400752, for surcharges, penalties and costs, said engineer correspondence, and said sampling and testing invoices is attached hereto as **Exhibit 36** and incorporated by reference.

75.

On or before March 6, 2024, for Invoice #12400752, Michael Sheets, President of Gold Creek, personally appeared at Dawsonville City Hall and delivered a letter protesting the assessed industrial surcharges, penalties and costs. The letter stated that the penalties assessed were erroneous under the City's Sewer Ordinance for a number of reasons and unconstitutional under the United States and Georgia Constitutions. A true and correct copy of Gold Creek's letter is attached hereto as **Exhibit 37** and incorporated by reference. Defendants have not responded to the protest.

76.

Between October 2022 and the filing of this Complaint, the City and its officials have illegally assessed a total of approximately $1,547,712.33 in industrial surcharges, penalties and costs against Gold Creek, despite knowing that

Gold Creek's industrial wastewater samples taken in compliance with the EPD Permit and the City's Ordinance show that the industrial wastewater is in full compliance with the effluent limits in the EPD Permit and does not meet the definition of "high strength wastewater" contained in the Ordinance, as amended. Likewise, prior to October 2022, the City and its officials illegally assessed Gold Creek with surcharges, penalties and costs, which were paid under protest. As shown by its conduct, unless enjoined by this Court, the City will continue to assess illegal surcharges, penalties and costs against Gold Creek under its invalid and unconstitutional Ordinance, as amended.

77.

Each time that the City and its officials took action to enforce the Ordinance and assessed surcharges, penalties and costs against Gold Creek for purported violations of the Ordinance, the City and its officials failed to demonstrate that the purported violations caused any damage or harm to the treatment process, equipment, or treatment and distribution facilities of the City, or that the purported violations endangered the public health, safety, or general welfare of the community. Each assessment and the accompanying threats of termination were made by the City and the other Defendants with knowledge that the sampling and analysis of Gold Creek's industrial wastewater showed that it was in full compliance with the EPD Permit and the Ordinance, as amended.

78.

Each time that the City and its officials took action to enforce the Ordinance, as amended, and assessed surcharges, penalties and costs against Gold Creek for purported violations, they did so knowing that they were basing their claimed violations on sampling that included discharge from the Plant's sewage pipe, and did so to generate revenue and were conducting activities for corporate advantage, gain or emolument.

### ***Gold Creek's Good Faith Attempts to Have Discussions with the City Regarding the Assessed Surcharges and Costs***

79.

At all times, Gold Creek has disputed and continues to dispute the City's testing method as being neither accurate nor valid as a means of testing the quality of industrial wastewater or sewage leaving the Plant facility, and has informed the City that utilization of those test results is in violation of the requirements of the City's own Ordinance, as amended.

80.

The following sampling and tests performed by Gold Creek show that the City's sampling and tests have produced inaccurate results and that the assessed surcharges, penalties and costs have been based on improper sampling that included sewage from the Plant, not solely on the Plant's industrial wastewater that was discharged to the City sewerage system after treatment in the Plant's

wastewater treatment plant in compliance with the EPD Permit and the Ordinance, as amended:

a.      On January 5, 2020, Wilcorp, Inc. ("Wilcorp") performed a smoke test at the Gold Creek Plant of all wastewater lines coming from the facility that established that no industrial wastewater lines were bypassing the Plant's pretreatment facility. The smoke test originated at the City's manhole and traveled through and to the vent pipe from which the pretreated industrial wastewater was coming. No smoke traveled to any other location, other than from the ground off of Gold Creek's property, indicating a possible break in the City's piping. Wilcorp determined that Gold Creek's system was performing as designed and approved and in compliance with the EPD Permit. A true and correct copy of Wilcorp's smoke test letter dated January 13, 2020 is attached hereto as **Exhibit 38** and incorporated by reference. The results of Wilcorp's smoke test were provided to the City on January 17, 2020.

b.      Wilcorp performed a second smoke test on January 28, 2020. The purpose of the test was to determine that the in-ground tanks located next to the drum screen were not discharging into the City's sewer system. During the test, no smoke came out from anywhere other than the three manholes that were tied to the tanks, and the test showed that the tanks were not

discharging into the sewer system and had not been used for quite some time. Defendant Barr was present for the video study, and the results of the study were immediately apparent to all those who were present. A true and correct copy of Wilcorp's smoke test letter dated January 28, 2020 is attached hereto as **Exhibit 39** and incorporated by reference.

c.     On April 24, 2020, Gold Creek conducted a video study of its sanitary sewer line. Wilcorp ran a camera through the Plant's sanitary sewer line while the Plant was running its poultry processing operations at full production and while use of the Plant's sanitary sewer, including but not limited to sinks and toilets, was discontinued (Gold Creek utilized porta-johns for the employees at that time). The camera video showed there was no flow of industrial wastewater or sewage in the sanitary sewer line during this process. Defendant Barr and another City representative were present for the video study, and the results of the study were immediately apparent to all those who were present. A true and correct copy of Wilcorp's video study letter is attached hereto as **Exhibit 40** and incorporated by reference.

d.     On April 25, 2020, Gold Creek conducted a dye trace study at its Plant. Hulsey Environmental Services ran dye tests of all the Plant's production lines. Different color dyes were run into each production intake while the sewage line was monitored. All dyes ran through the screen and

49

into the Plant's pre-treatment system, and the Plant's sewage was never colored by any of the dyes, showing that there is no connection that allows industrial wastewater to bypass the pretreatment plant and discharge through the sewage pipe. Defendant Barr and another City representative were present for the dye trace study, and the results of the study were immediately apparent to all those who were present. A true and correct copy of Hulsey Environmental Services' dye study letter is attached hereto as **Exhibit 41** and incorporated by reference.

81.

The sampling, studies and testing performed by Gold Creek demonstrate that Gold Creek is not in violation of the Ordinance, as amended, or the EPD Permit.

82.

Since receipt of the October 28, 2022 letter from the City with the attached invoice for $264,275.72, Gold Creek, through its protest letters and through its counsel, has made repeated attempts to discuss resolution of the Defendants' illegal assessments, improper sampling, and continuing threats to terminate Gold Creek's water and sewer service, but Defendants have failed to cease their illegal and improper actions.   Further, Defendants have never provided a process, procedure or hearing of any kind to address or resolve the numerous protest letters

sent by Gold Creek complaining of the illegal and unconstitutional surcharges, penalties and costs assessed against Gold Creek.

### *Defendants' Threats to*
### *Terminate Water and Sewer Service*

83.

Defendants have asserted and threatened in each letter to Gold Creek mentioned in the paragraphs above to discontinue and terminate water and sewer service to Gold Creek and its Plant, purportedly for violations of the Ordinance, as amended, and for any failure to pay invoices for the illegal and unconstitutional surcharges, penalties and costs. (Exhibits 8, 11, 13,15,17,19, 21, 23, 25,27,29,31, 33, 35, and 37).

84.

Defendants are improperly using a threat of disruption of water and sewer service as leverage in an attempt to force Gold Creek to pay exorbitant, illegal and unwarranted surcharges, penalties and costs.

### *Gold Creek's Compliance and*
### *the City's Faulty Testing Methods*

85.

All sampling, testing and studies conducted by Gold Creek in compliance with the EPD Permit and the City Ordinance demonstrate that it is in compliance with the City Ordinance, as amended, and the EPD Permit and that all industrial

wastewater discharged to the City's public sewerage system is well within limits set forth in the EPD Permit and do not meet the definition of "high strength wastewater" in the City Ordinance, as amended.

86.

The City's testing method is not accurate or valid as a means of testing the quality of industrial wastewater leaving Gold Creek's Plant facility. The City has utilized inaccurate and faulty methods for the purpose of assessing illegal and improper high strength wastewater surcharges against Gold Creek, including but not limited to sampling Gold Creek's discharge after its pre-treated industrial water and sanitary water have commingled into the same pipe. This sampling method is invalid under the City's own ordinance and under Gold Creek's EPD permit and is intentionally designed to treat Gold Creek differently than the City's other water and sewer users. In short, Gold Creek, as the city's only industrial customer, is the only water and sewer user for which the city is sampling sanitary water as if it is industrial water, having surcharges and penalties levied upon it as a result.

87.

At no time has the City withdrawn its threats to terminate Gold Creek's water and sewer service.

88.

Defendants' threats to terminate water and sewer service to Gold Creek's Plant are wrongful, contrary to the Ordinance, as amended, and the EPD Permit

and without lawful authority. Gold Creek is not in violation of the Ordinance, as amended, or the EPD Permit.

89.

As a direct and proximate result, if the Defendants carry out their threats of termination of water and sewer services to the Plant, Gold Creek will suffer irreparable harm and injury. Gold Creek will not be able to process its poultry, which is a perishable food product, and all fresh poultry product will be spoiled and lost. Without fresh water and the discharge of industrial wastewater and sewage, Gold Creek will be unable to protect the health and welfare of its employees, or of the thousands of people who consume Gold Creek's food products. Gold Creek will be required to suspend and stop its poultry processing operations at its Plant, thereby adversely affecting its employees, who will lose compensation. A production shut down will result in Gold Creek not being able to deliver custom poultry products to its customers. Termination of water and sewer services will cause irreparable harm to Gold Creek's customer relations, goodwill and reputation. Gold Creek has had a strong business relationship with its customers for many years. However, if Defendants carry out their threats of termination of water and sewer service to the Plant, the relationship between Gold Creek and its customers will be irreparably harmed, to the point of permanent loss of customers. Gold Creek will suffer a loss of customer relations and goodwill as a

result of the inability to deliver special order poultry products and custom cut poultry pieces. As a result, Gold Creek will lose customers and market share and suffer injury to its business reputation.

90.

Gold Creek has no adequate remedy at law for Defendants' threatened termination of water and sewer services to its Plant. No other remedy will immediately address and remedy the irreparable harm and injury that will be caused to Gold Creek.

### *No Sovereign Immunity or Official Immunity*

91.

The actual purpose of the Ordinance and the enactment of the amendments to amended Sections 14-30 and 14-84 of the Ordinance, as well the City's and its officials' improper and unlawful enforcement of the Ordinance, as amended, is to generate revenues and to drive Gold Creek's Plant out of business. By enacting and enforcing the Ordinance, as amended, including their inspection, sampling and monitoring of wastewater, as well as their illegal pursuit of their penalty scheme against Gold Creek, the City and its officials, in their official capacities, are conducting ministerial non-governmental functions for corporate advantage, gain, or emolument. Therefore, the City and its officials, in their official capacities, have negligently and improperly performed and engaged in, and are negligently and

improperly performing and engaging in, ministerial non-governmental functions for which sovereign immunity is not afforded. In accordance with O.C.G.A. § 36-33-1, the City and its officials are liable for their neglect to perform and/or their improper and unskillful performance of their ministerial duties. Alternatively, the City and its officials, in their official capacities, have improperly performed and engaged in, and are performing and engaging in, discretionary governmental functions with actual malice and intent to injure Gold Creek for which there is also no sovereign immunity.

92.

Likewise, through their enactment and enforcement of the Ordinance, as amended, including their inspection, sampling and monitoring of wastewater, as well as their illegal pursuit of their penalty scheme against Gold Creek, the individual Defendants, in their individual capacities, have negligently and/or improperly performed and engaged in, and are negligently and/or improperly performing and engaging in, ministerial acts for which official or qualified immunity is not afforded. Alternatively, the individual Defendants, in their individual capacities, have willfully performed and engaged in, and are willfully performing and engaging in, discretionary official acts with actual malice and actual intent to injure or harm Gold Creek for which there is also no official or qualified immunity. Defendants have engaged in such acts oppressively,

maliciously, corruptly, wantonly and without authority of law. In doing so, Defendants have willfully caused and are willfully causing Gold Creek to be irreparably harmed and damaged. In accordance with O.C.G.A. § 36-33-4, the individual Defendants, in their individual capacities, are personally liable for damages sustained by Gold Creek as a result of the official acts of such officials done oppressively, maliciously, corruptly, wantonly and without authority of law. Accordingly, the individual Defendants are not afforded official or qualified immunity.

93.

Upon information and belief, the City also has purchased a policy of insurance that covers the occurrences and/or claims described herein. The City's sovereign immunity, if any, and that of its officials, if any, therefore is waived to the extent of the above described insurance policy.

## COUNT ONE - VIOLATION OF 42 U.S.C. § 1983

94.

Gold Creek re-alleges paragraphs 1 through 93 and incorporate them as if fully set out herein.

95.

Defendants, under color of state law, have subjected Gold Creek to deprivation of rights secured to it by the U.S. Constitution in at least the respects set forth in the succeeding paragraphs of this Complaint.

## *Violations of the Equal Protection Clause*
## *of the Fourteenth Amendment of the U.S. Constitution*

96.

Defendants have subjected and continue to subject Gold Creek to deprivation of the right to equal protection of the laws, as secured by Amendment XIV, Section 1 of the United States Constitution and have acted under color of state law, specifically by the City Ordinance, as amended, as well as their policies and practices.

97.

The City Ordinance, as amended, specifically Section 14-84(a), on its face and as applied, as well as the Defendants' policies and practices regarding same, violate the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution as follows:

a.     Defendants created arbitrary and capricious classifications between two groups or classes of water users under the Ordinance: (i) users purportedly discharging "high strength" wastewater and (ii) users not discharging "high strength" wastewater. Section 14-84(a) of the Ordinance, as amended, establishes a "surcharge" for users purportedly discharging "high strength" wastewater into the City's sewerage system. "High strength" wastewater is defined in Section 14-84 of the Ordinance, as amended, as "wastewater which contains any of the following six primary pollutants

above the lower levels set forth on a monthly average concentration basis and shall not exceed the maximum level on a daily average concentration basis:

1. Five-day 20°C (20 degrees Centigrade) biochemical oxygen demand (BOD 5) above 350 milligrams per liter (mg/l), not to exceed a maximum of 600 mg/l.

2. Chemical oxygen demand (COD) above 700 milligrams per liter (mg/l), not to exceed a maximum of 1,200 mg/l.

3. Total ammonium nitrogen NH 3 -N above 30 mg/l, not to exceed a maximum of 60 mg/l.

4. Total TKN above 40 mg/l, not to exceed a maximum of 80 mg/l.(5)Total phosphorus above 20 mg/l, not to exceed a maximum of 30 mg/l.

5. Floatable oil and grease above 100 mg/l, not to exceed a maximum of 150 mg/l.

6. Total suspended solids above 300 milligrams per liter (mg/l), not to exceed a maximum of 600 mg/l."

b.      Under the Ordinance, as amended, only users that purportedly discharge "high strength" wastewater are subject to a monthly surcharge for wastewater treatment that is over 8.3 times the cost of providing that treatment service incurred by the City, in addition to a sliding scale penalty of up to 300% of the monthly surcharge amount. See Section 14-84(b).

c.      Upon information and belief, Gold Creek is the only user in the City that allegedly discharges wastewater that meets the definition of "high strength," and is the only user upon which the City and its officials assess

"high strength" surcharges. Under color of state law, Defendants single out Gold Creek as a class that is not entitled to continued water and sewer service absent payment of a surcharge and repeat offender penalties. Also under color of state law, Defendants single out Gold Creek as the only user of its sewer services who the City samples at a location where its industrial wastewater and sanitary water lines commingle at a location off of the property at issue.

d.     There is no compelling government interest for Defendants' creation of different classes of users or for their disparate treatment of Gold Creek as a user that allegedly discharges "high strength" wastewater, and/or such creation of different classes and such disparate treatment was not and is not rationally related to any legitimate state interest.

e.     Defendants have created arbitrary and capricious classifications among users of its water and sewerage system between these two groups for the illegitimate purpose of corporate advantage, gain, or emolument.

f.     Defendants' actions with respect to Gold Creek are arbitrary, irrational and unrelated to the purposes of a municipal water utility. Thus, Defendants, by virtue of these acts and by virtue of issuing illegal assessments to enforce these provisions of the Ordinance, as amended, have

violated Gold Creek's right to equal protection of the law under the Equal Protection Clause of the U.S. Constitution.

g.      Defendants' actions described in the foregoing paragraphs have injured, and continue to injure, Gold Creek and have resulted, and continue to result, in Gold Creek's loss of fundamental rights due to it by law, specifically the right to water and sewer service for a reasonable cost, without the imposition of surcharges, penalties and fees.

h.      If subsections 14-84(a) and (b) of the Ordinance, as amended, under which Defendants have committed unconstitutional acts described in the forgoing paragraphs were to be construed so as to have permitted this unconstitutional conduct, then those provisions violate Amendment XIV, Section I of the United States Constitution and Gold Creek, in that event, requests that the Court strike those subsections and declare them to be unconstitutional.

98.

Additionally, the City Ordinance, as amended, specifically Section 14-30(d), on its face and as applied, as well as the Defendants' policies and practices regarding same, violate the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution as follows:

a.      Defendants also violated Gold Creek's right to equal protection by illegal application and selective enforcement of Subsection 14-30(d) of its Ordinance, as amended ("repeat offender penalty").

b.      As of January 20, 2022, Subsection 14-30(d) of the Ordinance, as amended, provides: "[f]or the second offense in any 12-month period, a repeat offender fee equal to 25 percent of the penalty shall be added, with a fee equal to 50 percent of the penalty for the third offense, 75 percent of the penalty for the fourth and the fee shall be doubled (100 percent) for the fifth and any subsequent offense during any 12-month period. The foregoing notwithstanding, no fees shall be assessed in excess of that allowed by state law to the extent addressed by state law."

c.      Upon information and belief, since the enactment of new Subsection 14-30(d) on January 20, 2022, there have been other users besides Gold Creek that have violated the Ordinance, as amended, multiple times within a twelve-month period so as to trigger the application of the "repeat offender penalty" if it was applied in a facially neutral manner.

d.      Upon information and belief, Defendants have selectively enforced the "repeat offender penalty" against Gold Creek and have not enforced it against other users of the City's water and sewerage system that have committed multiple violations of the Ordinance, as amended, in a twelve-

month period. Under color of state law, Defendants single out Gold Creek as an alleged repeat offender that is not entitled to continued water and sewer service absent payment of repeat offender penalties.

e.      Defendants have wrongfully threatened to terminate, and unless enjoined will terminate, Gold Creek's water and sewerage service for allegedly violating the Ordinance, as amended, on multiple occasions, but upon information and belief, Defendants have not threatened or terminated the water and sewerage service for other users which are "repeat offenders."

f.      There is no compelling government interest for Defendants' selective enforcement of the "repeat offender penalty" against Gold Creek and not against other purported "repeat offenders," and such selective enforcement is intentionally and arbitrarily discriminatory and in bad faith. Further, there is no rational basis for Defendants' differential treatment of Gold Creek.

g.      Defendants have based and continue to base their "repeat offender penalties" that make up part of the illegally assessed invoices they have transmitted to Gold Creek on purported violations of Subsections 14-84(a) and (b) of the Ordinance, as amended. If Subsection 14-84(a) and (b) are found to be unconstitutional, repeat offender fees under Section 14-30(d) that were and continue to be applied based on such provisions are likewise

unconstitutional and violate Gold Creek's rights to equal protection of the laws.

h.      Defendants' actions have injured, and continue to injure, Gold Creek and have resulted, and continue to result, in a loss of fundamental rights due to Gold Creek by law, specifically the right to water and sewer service for a reasonable cost, without the imposition of repeat offender penalties.

***Violations of Substantive and Procedural Due Process
Under the Due Process Clause of the Fourteenth Amendment of the U.S.
Constitution***

99.

Gold Creek has a fundamental right and legitimate property interest, grounded in law, that continued municipal water and sewer service will be provided to it as a user of the service on reasonable terms and conditions, without the imposition of unreasonable surcharges, penalties and fees or the assessment of unjustified repeat offender penalties.

100.

However, Defendants have subjected and continue to subject Gold Creek to the deprivation of the right to substantive due process of law, as secured by Amendment XIV, Section II of the United States Constitution, and have acted under the color of state law. Specifically, the City Ordinance, as amended, on its face and as applied, and the Defendants' policies and practices regarding same,

violate the Substantive Due Process Clause of the Fourteenth Amendment of the U.S. Constitution as follows:

a.     Defendants have infringed upon Gold Creek's rights in violation of Amendment XIV, Section II, Paragraph I of the United States Constitution, without due process of law, by virtue of the facts alleged herein.

b.     Defendants have amended Section 14-84 of the Ordinance and imposed a repeat offender penalty under Section 14-30 for no compelling and/or rational purpose and have done so for the purpose of shrouding the oppressive penalties for wastewater in the guise of legality and for the purpose of corporate advantage, gain, or emolument.

c.     Defendants have imposed illegal surcharges and penalties upon Gold Creek, interfering with Gold Creek's fundamental rights.

d.     Defendants have wrongfully threatened to terminate, and unless enjoined will terminate, Gold Creek's water and sewerage service, interfering with and depriving Gold Creek of fundamental rights.

e.     The Ordinance, as amended, as well as Defendants' policies and practices regarding same, unconstitutionally interfere with Gold Creek's substantive due process rights, namely its right to continued water and sewer service without unreasonable surcharges, penalties and fees and without the assessment of unjustified repeat offender penalties. Such infringement

violates Gold Creek's right to Substantive Due Process under the Fourteenth Amendment to the U.S. Constitution for no compelling government reason and/or legitimate rational basis.

101.

Additionally, Defendants have subjected and continue to subject Gold Creek to the deprivation of the right to procedural due process of law, as secured by Amendment XIV, Section II of the United States Constitution, and have acted under the color of state law, specifically by the City Ordinance, as amended, on its face and as applied, in the following respects:

a.      The Ordinance, as amended, fails to provide an adequate remedy for the deprivation of Gold Creek's fundamental rights. The Ordinance, as amended, does not contain an appeals provision to challenge the assessment of "high strength" surcharges or the imposition of repeat offender penalties. The only potentially applicable provision in the Ordinance, as amended, for challenging a wrongful demand for payment of an assessment is Section 14-27, and that section merely provides that a user with a complaint about an invoice "shall present his claim, in person, at City Hall", and provides no further procedure to challenge an erroneous invoice or a decision by City Hall to enforce an erroneous invoice, much less an unconstitutional assessment of "high strength" surcharges and repeat offender penalties.

b.     The Ordinance does not provide adequate procedural safeguards against the unlawful imposition of surcharges, penalties and fines. Under the Ordinance, as amended, there is no notice or opportunity to be heard at a meaningful time in a meaningful manner with respect to "high strength" surcharges or repeat offender penalties.

c.     This Constitutional infirmity is not cured by the newly added Section 14-85 of the Ordinance, because it only allows adjustment of fees and penalties in the "sole discretion" of the city manager.

d.     Defendants' acts as described herein constitute an arbitrary, irrational, and capricious abuse of power in violation of Gold Creek's rights to procedural due process of law. If the above-described surcharge and penalty provisions of the Ordinance, as amended, continue to be assessed without a process to appeal or challenge the Defendants' decisions, Gold Creek will continue to incur hundreds of thousands of dollars more in surcharges, fees, costs and penalties in violation of its procedural due process rights.

### *Violations of the Ex Post Facto Clause*
### *of the U.S. Constitution*

102.

The amount of the surcharges and fines that Defendants have imposed on Gold Creek has been increased by Defendants' retroactive and illegal application of the repeat offender fee in Section 14-30 of the Ordinance, as amended.

103.

Since January 20, 2022, when Section 14-30 of the Ordinance was amended to add Section 14-30(d), Defendants have calculated repeat offender fees based on what they claim to be past violations of the Ordinance, as amended, by Gold Creek.

104.

Upon information and belief, Defendants have assessed illegal surcharges and penalties against Gold Creek. Since the addition of Section 14-30(d) to the Ordinance, Defendants have based their calculations of repeat offender fees in each invoice on these illegally assessed surcharges and penalties.

105.

The Defendants' policy and practice of the imposition of penalties based on past invoices which were illegally assessed violates Gold Creek's right to be free of ex post facto laws as guaranteed by Article I, Section IX, Paragraph III of the United States Constitution.

106.

Defendants' actions described in the forgoing paragraphs were committed under color of state law, specifically the Ordinance, as amended, and Defendants have injured Gold Creek and infringed on Gold Creek's fundamental rights without due process of law.

107.

If the provisions of the amended Ordinance, namely Section 14-30 and Section 14-84, under which Defendants have acted to commit the unconstitutional acts described in the forgoing paragraphs were to be construed so as to have permitted this unconstitutional conduct, then those provisions violate Article I, Section IX, Paragraph III of the United States Constitution and Gold Creek, in that event, requests that the Court strike the Ordinance provisions and declare them to be unconstitutional.

108.

By virtue of the foregoing violations by Defendants, Gold Creek is entitled to declaratory judgment from this Court that the "high strength" surcharge and "repeat offender" penalty provisions of the City Ordinance, as amended, are unconstitutional, and Gold Creek is also entitled to injunctive relief enjoining Defendants' enforcement of these unconstitutional provisions of the Ordinance, as amended.

## COUNT TWO - *ULTRA VIRES* PERFORMANCE OF MINISTERIAL DUTIES

109.

Gold Creek re-alleges paragraphs 1 through 93 and incorporates them as if fully set out herein.

110.

Defendants have a duty to perform their ministerial duties in compliance with the City Ordinance, as amended. The Defendants have breached this duty through ministerial conduct that violates the City Ordinance, as amended, and is therefore *ultra vires*, which includes but is not limited to the following conduct:

a.      Defendants have improperly conducted all the sampling for Gold Creek on which the City bases its invoice amounts, including the minimum number of two samples that must be conducted "by the user," in violation of Section 14-84(c).

b.      Some of the City's invoices to Gold Creek impose surcharges and penalties based on purported daily exceedances of the lower-level monthly average concentrations and/or limits in the permit, which is in violation of the express language in section 14-84. Additionally, Section 14-84 of the Ordinance, as amended, does not authorize a penalty based on daily exceedances or permit violations, nor is there any authority for determining permit violations from sampling at a location not authorized by the facility's pretreatment permit. Therefore, any penalties for daily exceedances or permit violations are also erroneous and not authorized by the Ordinance, as amended.

c.     The sampling by the City's consultant is improperly taken at a point whereby the consultant sampled a combination of Gold Creek's sanitary discharge and industrial wastewater which is contrary to the intent and language of Section 14-84 regarding sampling of "high strength wastewater."

d.     The City has calculated some of its invoices billed to Gold Creek using sampling events conducted spanning multiple months in violation of Section 14-84 of the Ordinance, as amended, which expressly and repeatedly states that parameter levels and any surcharges and penalties are to be calculated "per month" and based upon "monthly average concentrations."

e.     The City's invoices to Gold Creek demand reimbursement from Gold Creek of fees that the City paid to its consultant, which is not authorized by Section 14-84 or anywhere else in the Ordinance.

111.

Defendants have improperly and harmfully performed their ministerial duties to comply with the City's own Ordinance, as amended, and these breaches have caused and are causing irreparable harm to Gold Creek and such irreparable harm was and is a foreseeable consequence of Defendants' *ultra vires* conduct.

## COUNT THREE- VIOLATION OF RIGHTS UNDER THE GEORGIA CONSTUTUTION

### 112.

Gold Creek re-alleges paragraphs 1 through 93 and incorporate them as if fully set out herein.

### 113.

Defendants have subjected and continue to subject Gold Creek to deprivation of rights secured to it by the Georgia Constitution in at least the respects set forth in the succeeding paragraphs of this Complaint.

### ***Violations of the Equal Protection Clause of the Georgia Constitution***

### 114.

Defendants have subjected and continue to subject Gold Creek to deprivation of the right to equal protection of the laws, as secured by Article I, Section I, Paragraph 2 of the Georgia Constitution, specifically by the City Ordinance, as amended, as well as by their policies and practices.

### 115.

The City Ordinance, as amended, specifically Section 14-84(a), on its face and as applied, as well as the Defendants' policies and practices regarding same, violate the Equal Protection Clause of Article I, Section I, Paragraph 2 of the Georgia Constitution as follows:

a.      Defendant created arbitrary and capricious classifications between two groups or classes of water users under the Ordinance: (i) users allegedly discharging "high strength" wastewater and (ii) users not discharging "high strength" wastewater. Section 14-84 (a) of the Ordinance, as amended, establishes a "surcharge" for users purportedly discharging "high strength" wastewater into the City's sewerage system. "High strength" wastewater is defined in Section 14-84 of the Ordinance, as amended, as "wastewater which contains any of the following six primary pollutants above the lower levels set forth on a monthly average concentration basis and shall not exceed the maximum level on a daily average concentration basis:

1. Five-day 20°C (20 degrees Centigrade) biochemical oxygen demand (BOD 5) above 350 milligrams per liter (mg/l), not to exceed a maximum of 600 mg/l.

2. Chemical oxygen demand (COD) above 700 milligrams per liter (mg/l), not to exceed a maximum of 1,200 mg/l.

3. Total ammonium nitrogen NH 3 -N above 30 mg/l, not to exceed a maximum of 60 mg/l.

4. Total TKN above 40 mg/l, not to exceed a maximum of 80 mg/l.(5)Total phosphorus above 20 mg/l, not to exceed a maximum of 30 mg/l.

5. Floatable oil and grease above 100 mg/l, not to exceed a maximum of 150 mg/l.

6. Total suspended solids above 300 milligrams per liter (mg/l), not to exceed a maximum of 600 mg/l."

b.     Under the Ordinance, as amended, only users that purportedly discharge "high strength" wastewater are subject to a monthly surcharge for wastewater treatment that is over 8.3 times the cost of providing that treatment service incurred by the City, in addition to a sliding scale penalty of up to 300% of the monthly surcharge amount. See Section 14-84(b).

c.     Upon information and belief, Gold Creek is the only user in the City that allegedly discharges wastewater that allegedly meets the definition of "high strength," and is the only user upon which the City and its officials assess "high strength" surcharges. Defendants single out Gold Creek as a class that is not entitled to continued water and sewer service absent payment of a surcharge and repeat offender penalties. Defendants single out Gold Creek as the only user of its sewer services who the City samples at a location where its industrial wastewater and sanitary water lines commingle at a location off of Gold Creek property.

d.     There is no compelling government interest for Defendants' creation of different classes of users or for their disparate treatment of Gold Creek as a user that allegedly discharges "high strength" wastewater, and/or such creation of different classes and such disparate treatment was not and is not rationally related to any legitimate state or City interest.

e.     Defendants have created arbitrary and capricious classifications among users of its water and sewerage system between these two groups for the illegitimate purpose of corporate advantage, gain, or emolument.

f.     Defendants' actions with respect to Gold Creek are arbitrary, irrational and unrelated to the purposes of a municipal water utility. Thus, Defendants, by virtue of these acts and by virtue of issuing illegal assessments to enforce these provisions of the Ordinance, as amended, have violated Gold Creek's right to equal protection of the law under the Equal Protection Clause of the Georgia Constitution.

g.     Defendants' actions described in the foregoing paragraphs have injured, and continue to injure, Gold Creek and have resulted, and continue to result, in Gold Creek's loss of fundamental rights due to it by law, specifically the right to water and sewer service for a reasonable cost, without the imposition of surcharges, penalties and fees.

h.     If subsections 14-84(a) and (b) of the Ordinance, as amended, under which Defendants have committed unconstitutional acts described in the forgoing paragraphs were to be construed so as to have permitted this unconstitutional conduct, then those provisions violate Article I, Section I, Paragraph 2 of the Georgia Constitution, and Gold Creek, in that event,

requests that the Court strike those subsections and declare them to be unconstitutional.

116.

Additionally, the City Ordinance, as amended, specifically Section 14-30(d), on its face and as applied, as well as the Defendants' policies and procedures regarding same, violate the Equal Protection Clause of Article I, Section I, Paragraph 2 of the Georgia Constitution as follows:

a.     Defendants also violated Gold Creek's right to equal protection by illegal application and enforcement of Subsection 14-30(d) of the City Ordinance, as amended ("repeat offender penalty").

b.     As of January 20, 2022, Subsection 14-30(d) of the Ordinance, as amended, provides: "[f]or the second offense in any 12-month period, a repeat offender fee equal to 25 percent of the penalty shall be added, with a fee equal to 50 percent of the penalty for the third offense, 75 percent of the penalty for the fourth and the fee shall be doubled (100 percent) for the fifth and any subsequent offense during any 12-month period. The foregoing notwithstanding, no fees shall be assessed in excess of that allowed by state law to the extent addressed by state law."

c.     Upon information and belief, since the enactment of new Subsection 14-30(d) on January 20, 2022, there have been other users besides Gold

Creek that would be assessed for violation of the Ordinance, as amended, multiple times within a twelve-month period so as to trigger the application of the "repeat offender penalty" if it was applied in a facially neutral manner.

d.      Upon information and belief, Defendants have selectively enforced the "repeat offender penalty" against Gold Creek and have not enforced it against other users of the City's water and sewerage system that have committed multiple violations of the Ordinance, as amended, in a twelve-month period. Defendants single out Gold Creek as an alleged repeat offender that is not entitled to continue water and sewer service absent payment of repeat offender penalties.

e.      There is no compelling government interest for Defendants' selective enforcement of the "repeat offender penalty" against Gold Creek and not against other purported "repeat offenders," and such selective enforcement is intentionally and arbitrarily discriminatory and in bad faith. Further, there is no rational basis for Defendants' differential treatment of Gold Creek.

f.      Defendants have based and continue to base their "repeat offender penalties" that make up part of the illegally assessed invoices they have transmitted to Gold Creek on purported violations of Subsections 14-84(a) and (b) of the Ordinance, as amended. If Subsection 14-84(a) and (b) are

found to be unconstitutional, repeat offender fees under Section 14-30(d) that were and continue to be applied based on such provisions are likewise unconstitutional and violate Gold Creek's rights to equal protection of the laws.

g.      Defendants have wrongfully threatened to terminate, and unless enjoined will terminate, Gold Creek's water and sewerage service for allegedly violating the Ordinance, as amended, on multiple occasions, but upon information and belief, Defendants have not threatened to terminate the water and sewerage service for other "repeat violators."

h.      Defendants' actions have injured, and continued to injure, Gold Creek and have resulted, and continue to result, in a loss of fundamental rights due to Gold Creek by law, specifically the right to water and sewer service for a reasonable cost, without the imposition of repeat offender penalties.

### *Violations of Substantive and Procedural Due Process*
### *Under the Due Process Clause of the Georgia Constitution*

117.

Gold Creek has a fundamental right and legitimate property interest, grounded in law, that continued municipal water and sewer service will be provided to it as a user of the service on reasonable terms and conditions, without the imposition of unreasonable surcharges, penalties and fees or the assessment of unjustified repeat offender penalties.

118.

However, Defendants have subjected and continue to subject Gold Creek to the deprivation of the right to substantive due process of law, as secured by Article I, Section I, Paragraph I of the Georgia Constitution. Specifically, the City Ordinance, as amended, on its face and as applied, and the Defendants' policies and practices regarding same, violate the Substantive Due Process Clause of Georgia Constitution as follows:

a.     Defendants have infringed upon Gold Creek's rights in violation of Article I, Section I, Paragraph I of the Georgia Constitution, without due process of law, by virtue of the facts alleged herein.

b.     Defendants have amended Section 14-84 of its Ordinance and imposed a repeat offender penalty under Section 14-30 for no compelling and/or rational purpose and have done so for the purpose of shrouding its oppressive penalties for wastewater in the guise of legality and for the purpose of corporate advantage, gain, or emolument.

c.     Defendants have imposed illegal surcharges and penalties upon Gold Creek, interfering with Gold Creek's fundamental rights.

d.     Defendants have wrongfully threatened to terminate, and unless enjoined will terminate, Gold Creek's water and sewerage service, interfering with and depriving Gold Creek of fundamental rights.

e.      The Ordinance, as amended, as well as Defendants' policies and practices regarding same, unconstitutionally interfere with Gold Creek's substantive due process rights, namely its right to continued water and sewer service without unreasonable surcharges, penalties and fees and without the assessment of unjustified repeat offender penalties. Such infringement violates Gold Creek's right to Substantive Due Process under Article I, Section I, Paragraph I of the Georgia Constitution for no compelling government reason and/or legitimate rational basis.

119.

Additionally, Defendants have subjected and continue to subject Gold Creek to the deprivation of the right to procedural due process of law, as secured by Article I, Section I, Paragraph I of the Georgia Constitution, specifically by the City Ordinance, as amended, on its face and as applied, in the following respects:

a.      The Ordinance, as amended, fails to provide an adequate remedy for the deprivation of Gold Creek's fundamental rights. The Ordinance, as amended, does not contain an appeals provision to challenge the assessment of improper and illegal "high strength" surcharges or the imposition of repeat offender penalties. The only potentially applicable provision in the Ordinance, as amended, for challenging a wrongful demand for payment of an assessment is Section 14-27, and that section merely provides that a user

with a complaint about an invoice "shall present his claim, in person, at City Hall", and provides no further procedure to challenge an erroneous invoice or a decision by City Hall to enforce an erroneous invoice, much less an unconstitutional assessment of "high strength surcharges and repeat offender penalties.

b.    The Ordinance does not provide adequate procedural safeguards against the unlawful imposition of surcharges, penalties and fines. Under the Ordinance, as amended, there is no notice or opportunity to be heard at a meaningful time in a meaningful manner with respect to "high strength" surcharges or repeat offender penalties.

c.    This Constitutional infirmity is not cured by the newly added Section 14-85 of the Ordinance, because it only allows adjustment of fees and penalties in the "sole discretion" of the city manager.

d.    Defendants' acts as described herein constitute an arbitrary, irrational and capricious abuse of power in violation of Gold Creek's rights to procedural due process of law. If the above-described surcharge and penalty provisions of the Ordinance, as amended, continue to be assessed without a process to appeal or challenge the Defendants' decisions, Gold Creek will continue to incur hundreds of thousands of dollars more in surcharges, fees, costs and penalties in violation of its procedural due process rights.

### *Violation of the Ex Post Facto Clause*
### *of the Georgia Constitution*

120.

The amount of the surcharges and fines that Defendants have imposed on Gold Creek has been increased by Defendants' retroactive and illegal application of the repeat offender fee in Section 14-30 of the Ordinance, as amended.

121.

Since January 20, 2022, when Section 14-30 of the Ordinance was amended to add Section 14-30(d), Defendants have calculated repeat offender fees based on what they claim to be past violations of the Ordinance, as amended, by Gold Creek.

122.

Upon information and belief, Defendants have assessed illegal surcharges and penalties against Gold Creek. Since the addition of Section 14-30(d) to the Ordinance, Defendants have based their calculations of repeat offender fees in each invoice on these illegally assessed surcharges and penalties.

123.

Defendants' policy and practice of the imposition of penalties based on past invoices which were illegally assessed violates Gold Creek's right to be free of ex post facto laws as guaranteed by Article I, Section I, Paragraph X of the Georgia Constitution.

124.

Defendants' actions described in the forgoing paragraphs have injured Gold Creek and infringed on Gold Creek's fundamental rights without due process of law.

125.

If the provisions of the amended Ordinance, namely Section 14-30 and Section 14-84, under which Defendants have acted to commit the unconstitutional acts described in the forgoing paragraphs were to be construed so as to have permitted this unconstitutional conduct, then those provisions violate Article I, Section I, Paragraph X of the Georgia Constitution, and Gold Creek, in that event, requests that the Court strike the Ordinance provisions and declare them to be unconstitutional.

126.

By virtue of the foregoing violations by Defendants, Gold Creek is entitled to declaratory judgment from this Court that the "high strength" surcharge and "repeat offender" penalty provisions of the City Ordinance, as amended, are unconstitutional, and Gold Creek is also entitled to injunctive relief enjoining Defendants' enforcement of these unconstitutional provisions of the Ordinance, as amended.

## <u>COUNT FOUR-REQUEST FOR INJUNCTIVE RELIEF</u>

### 127.

Gold Creek incorporates by reference and restates the allegations contained in Paragraphs 1 through 126 of its Complaint, as if restated verbatim herein.

### 128.

For all the reasons set forth herein, this Court should enter a preliminary injunction during the pendency of this litigation in order to maintain the status quo enjoining and restraining Defendants, their officials, agents, servants and employees, and anyone acting in concert with them or any of them, from disconnecting, discontinuing, terminating or turning off water or sewer service to Gold Creek and its poultry processing Plant in Dawsonville, Georgia. The status quo sought to be preserved is connected, free flowing, unblocked and fully functioning water and sewer service to and from the Plant. Ultimately, after a final hearing, this Court should enter a permanent injunction prohibiting the Defendants, their officials, agents, servants and employees, and anyone acting in concert with them or any of them, from disconnecting, terminating or cutting off water and sewer services to Gold Creek's Plant for nonpayment of the illegal surcharges, penalties and penalties on penalties which Defendants have assessed and continue to assess against Gold Creek.

129.

Termination of water or sewer service to Gold Creek's Plant will cause irreparable harm to Gold Creek for which no legal remedy adequately can compensate. If Defendants terminate water and sewer services to Gold Creek's Plant as they have threatened, Gold Creek will suffer irreparable harm and interference with its property and business that cannot be compensated by way of damages. Gold Creek, its employees, and the customers it serves, as well as consumers of processed chicken, will suffer irreparable harm if the requested injunction is not granted. This irreparable harm cannot be corrected by a future remedy. It cannot be adequately repaired or redressed in a court of law by an award of money damages.

130.

Left unrestrained, Defendants' termination of water and sewer services to Gold Creek's Plant will harm Gold Creek as identified herein and, by extension, will cause irreparable harm to Gold Creek's employees and customers, as well as consumers of chicken food products.

131.

It is clear that Gold Creek will suffer irreparable harm from the Defendants' termination of water and sewer services. The resultant impact to Gold Creek's employees, its customers, consumers of chicken products will be incalculable and will also threaten their health, safety and welfare. The termination of sewer service

will inevitably cause the back-up and overflow of sewage and the flooding of the Gold Creek Plant facilities, and such flooding would render the Plant inoperable for an extended period of time. A sewage backup and flooding of the Gold Creek Plant would cause a significant Plant closure for an extended period of time, and would create public health, safety and welfare issues, and serious biological and sanitation hazards for employees and other residents of the City. Even after reconnection of water and sewer services, flooding impacts will have to be remedied and remediated. Being forced to close the Plant will result in irreparable, lost production time, loss of business and loss of goodwill.

132.

Citizens of the City have a valid interest in Gold Creek's Plant operations not being disrupted, and harm to such interest cannot be adequately remedied at law. Furthermore, the employees of Gold Creek and other residents, as well as the general public have a valid interest in being protected from the serious harm of sewage back up and flooding. The health, safety and welfare of Gold Creek's employees will be at risk because of any disconnection from the City's sewerage system. Furthermore, this threat will extend to the general public at large.

133.

Preliminary and permanent injunctive relief will serve the public interest of the community and this state. Issuance of an injunction in this case is required to protect the public interest.

134.

The harm to Gold Creek if Defendants are not enjoined as requested herein, is far greater than any harm to the Defendants if they are enjoined. Indeed, Defendants have not demonstrated and cannot demonstrate that the purported violations caused or will cause any immediate damage or harm to the treatment process, equipment, or treatment and distribution facilities of the City, or that the purported violations endangered or will endanger the public health, safety, or general welfare of the community.

135.

By virtue of the foregoing, Gold Creek is entitled to a preliminary and a permanent injunction against Defendants enjoining and restraining Defendants, their officials, agents, servants and employees, and anyone acting in concert with them or any of them, from disconnecting, discontinuing, terminating or turning off water or sewer service to Gold Creek and its poultry processing Plant in Dawsonville, Georgia.

136.

Likewise, this Court should enjoin the City and its officials from continuing to take action to enforce the Ordinance as amended against Gold Creek by assessing surcharges, penalties and costs, including those related to purported "high strength" wastewater discharges and alleged "repeat offender" penalties during the pendency of this action, and should permanently enjoin the Defendants from implementing or enforcing the illegal and unconstitutional "high strength" wastewater surcharges, "repeat offender" penalties and other provisions of the Ordinance that unconstitutionally deprive Gold Creek of equal protection of the law and of its fundamental rights and property interests without due process of law.

## <u>COUNT FIVE - DECLARATORY JUDGEMENT UNDER 28 U.S.C. §2201</u>

137.

Gold Creek incorporates by reference and restates the allegations contained in Paragraphs 1 through 136 of its Complaint, as if restated verbatim herein.

138.

Gold Creek is entitled to a declaratory judgment from this Court, pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and Rules 54 and 57 of the Federal Rules of Civil Procedure, holding that Sections 14-84(a), 14-84(b) and 14-30(d) of the City's Ordinance, as amended, are unconstitutional under the provisions of the

United States Constitution and the Constitution of the State of Georgia enumerated in the paragraphs above.

## COUNT SIX -EXPENSES OF LITIGATION AND ATTORNEY FEES UNDER 42 U.S.C. § 1988

### 139.

Gold Creek incorporates by reference and restates the allegations contained in Paragraphs 1 through 138 of its Complaint, as if restated verbatim herein.

### 140.

Gold Creek is entitled to recover reasonable attorneys' fees and expenses of litigation pursuant to 42 U.S.C. §1988 for this lawsuit seeking to redress deprivations of rights secured by the U.S. Constitution pursuant to 42 U.S.C. § 1983.

## COUNT SEVEN- EXPENSES OF LITIGATION UNDER O.C.G.A. § 13-6-11

### 141.

Gold Creek incorporates by reference and restates the allegations contained in Paragraphs 1 through 140 of its Complaint.

### 142.

The actions of Defendants were undertaken in bad faith, were stubbornly litigious, and/or have caused Gold Creek unnecessary trouble and expense.

143.

Accordingly, pursuant to O.C.G.A. § 13-6-11, Gold Creek is entitled to an award of its expenses of litigation, including its reasonable attorneys' fees.

**WHEREFORE**, Plaintiffs respectfully request:

(1)   That this Court issue a Preliminary Injunction and a Permanent Injunction, pursuant to 42 U.S.C. § 1983 and Rule 65 of the Federal Rules of Civil Procedure, enjoining and restraining Defendants, their officials, agents, servants and employees, and anyone acting in concert with them or any of them, from disconnecting, discontinuing, terminating or turning off water or sewer service to Gold Creek and its poultry processing Plant in Dawsonville, Georgia because of nonpayment of illegal and unconstitutional high strength wastewater surcharges and penalties.

(2)   Additionally, that this Court issue a Preliminary Injunction and a Permanent Injunction, pursuant to 42 U.S.C. § 1983 and Rule 65 of the Federal Rules of Civil Procedure, in favor of Gold Creek and against Defendants enjoining the City and its officials, agents, servants and employees, and anyone acting in concert with them or any of them, from continuing to take action to enforce the Ordinance, as amended, against Gold Creek by assessing surcharges, penalties

and costs, including those related to purported high strength wastewater discharges.

(3)     That this Court issue a declaratory judgment, pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and Rules 54 and 57 of the Federal Rules of Civil Procedure, that provides that Sections 14-84(a), 14-84(b), and 14-30(d) of the City's Ordinance are unconstitutional and illegal under Article I, Section IX, Paragraph 3 and Amendment XIV, Sections I and II of the United States Constitution and Article I, Section I, Paragraphs 1, 2, and 10 of the Georgia Constitution.

(4)     That this Court award expenses of litigation, including reasonable attorneys' fees, to Gold Creek under O.C.G.A. § 13-6-11 and 42 U.S.C. §1988; and

(5)     That Gold Creek be granted all such other relief as this Court may deem just and proper.

This 12th day of April 2024.

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP

*/s/ Stephen E. O'Day*
Stephen E. O'Day
Georgia Bar No. 549337
Andrew M. Thompson
Georgia Bar No. 707319
Amanda M. Cheek
Georgia Bar No. 792443
1105 West Peachtree Street NE, Suite 1000
Atlanta, Georgia 30309-3592
Phone:  404-815-3500
Fax:  404-685-6827
Email: soday@sgrlaw.com
Email: athompson@sgrlaw.com
Email: acheek@sgrlaw.com